1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID L. GARRISON, an individual, | Case No. 09-cv-1728-JPD |
| Plaintiff, | ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| MERCHANT & GOULD, P.C., a Minnesota professional corporation, | |
| Defendant. | |

## I.       INTRODUCTION AND SUMMARY CONCLUSION

This matter comes before the Court on cross-motions for summary judgment.  Dkt. 26; Dkt. 29.[1]  Plaintiff David Garrison ("Garrison") brought this diversity action against his former employer, defendant law firm Merchant & Gould, P.C. ("Merchant" or "the firm"), claiming that Merchant breached his employment contract and wrongfully withheld his wages when the firm terminated his employment as an of counsel attorney.  Specifically, Garrison contends in his complaint that Merchant (1) breached the parties' employment contract by failing to fully compensate him for his billings, failing to provide him with written notice of his termination two weeks in advance, and failing to reimburse his promotional expenses; (2) violated RCW

---

[1]  As discussed below, the Court construes Garrison's "Motion for Partial Summary Judgment," Dkt. 29, as a motion for summary judgment on all the remaining claims in this action.

ORDER
PAGE - 1

49.48 *et seq.* and RCW 49.52 *et seq.* by wrongfully withholding wages owed under the

employment contract; (3) breached an oral contract by failing to pay him a year-end bonus, and

(4) violated the Washington Consumer Protection Act, RCW 19.86 *et seq.* *See* Dkt. 1, Ex. B at

10-12.  After careful consideration of the parties' briefs, oral argument on the motions, the

governing law and the balance of the record, the Court ORDERS that the parties' summary

judgment motions, Dkts. 26 and 29, are GRANTED IN PART and DENIED IN PART as set

forth below.

## II.    JURISDICTION

The parties have consented to having this matter heard by the undersigned Magistrate

Judge pursuant to 28 U.S.C. § 636(c).  *See* Dkt. 18; Dkt. 20.  This action was removed

pursuant to 28 U.S.C. § 1441, and this Court has diversity jurisdiction pursuant to 28 U.S.C.

§ 1332.  Dkt. 1 at 1-3.  Garrison is a resident of Washington State, and Merchant is a

professional corporation with its principal place of business in Minnesota.  *See* Dkt. 17 at 2

(Skjeveland Decl.).  Although Garrison's complaint seeking lost wages, a lost bonus,

unreimbursed expenses, exemplary damages, and attorney's fees did not specify the amount of

money being sought as damages, the amount in controversy at the time this action was

removed "more likely than not" exceeded $75,000.  *See* Dkt. 1 at 2; *id.*, Ex. B at 3-6.  *See also*

*Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (providing that the amount-in-

controversy requirement may be satisfied by "the amount of damages in dispute, as well as

attorney's fees, if authorized by statute or contract."); *Sanchez v. Monumental Life Ins. Co.*,

102 F.3d 398, 404 (9th Cir. 1996) (defendants bear the burden of showing by a preponderance

of the evidence that it is "more likely than not" that the amount in controversy exceeds the

amount necessary to establish diversity jurisdiction).  Although Garrison reduced the amount

in controversy below $75,000 during the course of this litigation by conceding several claims,

a reduction of the amount in controversy following removal does not divest this Court of

jurisdiction because "the propriety of removal is determined solely on the basis of the

ORDER
PAGE - 2

1    pleadings filed in state court." *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th

2    Cir. 2006).  *See also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90

3    (1938) ("Events occurring subsequent to the institution of suit which reduce the amount

4    recoverable below the statutory limit do not oust [federal] jurisdiction," including a situation

5    where "the plaintiff after removal, by stipulation, by affidavit, or by amendment of his

6    pleadings, reduces the claim below the requisite amount[.]"); *Sparta Surgical Corp. v. National

7    *Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) (noting that post-

8    removal amendments to a complaint cannot divest a court of federal jurisdiction).

9                                    III.    BACKGROUND

10        A.    Procedural History

11            Garrison initiated this action in the King County Superior Court on November 5, 2009,

12   seeking damages for lost wages, a lost year-end bonus, reimbursement of promotional

13   expenses, exemplary damages, and attorney's fees and costs.  Dkt. 1, Ex. A.  Merchant

14   removed this action to this Court based upon diversity jurisdiction on December 3, 2009.  Dkt.

15   1 at 1-3.  Merchant filed its answer to the complaint on December 7, 2009.  Dkt. 8.

16            Merchant filed its motion for summary judgment on January 6, 2011.  Dkt. 26.  On the

17   same date, Garrison also moved for summary judgment on all of his claims with the exception

18   of his claim that Merchant violated an oral contract to pay him a year-end bonus.  Dkt. 29.

19   Because Garrison subsequently conceded that claim, however, the Court construes Garrison's

20   motion for partial summary judgment as a motion for summary judgment on all remaining

21   claims in this action.  Both parties filed responses on January 24, 2011, Dkts. 32 and 33, and

22   Merchant filed a reply on January 28, 2011, Dkt. 35.  On February 16, 2011, the Court heard

23   oral argument from both parties regarding the summary judgment motions.  Dkt. 36; Dkt. 37.

24   At the argument, the parties conceded that at trial, they would have nothing else to offer, and

25   both agreed the Court could resolve issues of fact and credibility based on the record presented.

26

1        B.      Factual History

2            The material facts of this case are undisputed.  Merchant is a law firm which focuses on

3    the practice of intellectual property law.  Although Merchant's principal place of business is in

4    Minnesota, the firm also has a law office in Seattle, Washington.  Garrison is a Seattle attorney

5    who specializes in patent and trademark, advising clients on their intellectual property, and a

6    small amount of litigation.  Dkt. 28, Ex. A at 17-18 (Garrison Dep.); *id*., Ex. B (Garrison

7    resume).  Prior to his affiliation with Merchant, Garrison primarily practiced law as a solo

8    practitioner.  *Id*., Ex. A at 19 (Garrison Dep.).  Because Garrison wished to devote less time to

9    collections and administrative matters, he contacted Merchant in February and March 2007 and

10   inquired if they would be interested in having him join the firm's Seattle office as an of-

11   counsel attorney.  *See id*. at 24.  After some negotiations, Merchant offered Garrison an of-

12   counsel position on June 22, 2007.  *See id.*, Ex. C.

13           On July 31, 2007, the parties entered into an employment arrangement ("the contract")

14   providing that Garrison's employment would commence on August 1, 2007, and his position

15   would be automatically renewed from year to year unless terminated by the parties' mutual

16   written consent, Garrison's death, or termination of the contract by "either party . . . for any

17   reason upon two weeks written notice."  *Id*. at 4.  With respect to compensation, the contract

18   provided:

19           [Y]ou shall be compensated based upon actual billed hours by
20           you . . . Actual billed hours means hours recorded by you and
             billed to Merchant & Gould's clients **and actually invoiced** to
21           clients.  Time recorded by you shall not be treated as an actual
             billing unless and until invoiced to clients.  Client discounts and
22           contingent fees are not considered hours billed and invoiced to
             the client and therefore you will not be compensated for those
23           hours.

24           To determine your compensation, the total hours actually billed
25           by you for Merchant & Gould will be multiplied by an hourly
             rate equivalent to 40% of the rate your hours were billed at . . .
26           Hours billed in excess of 1,600 for each billing year (October 1

ORDER
PAGE - 4

to September 30) shall be excluded from this compensation arrangement and be considered for bonus purposes at the discretion of the Executive Committee.

While employed by Merchant & Gould, you will receive a compensation rate, payable in bi-monthly installments, equal to 50 hours per pay period.  Merchant & Gould will adjust the draw at the end of each calendar quarter based on the actual hours billed during the previous quarter.  At the end of each calendar quarter, a reconciliation of hours billed vs. draws paid will take place and any difference will be adjusted for in the first draw check of the subsequent quarter.  If your draws for a quarter exceed your actual earned compensation for the quarter, Merchant & Gould will recover such excess by reducing the subsequent draw . . . .  Should either party terminate this arrangement, you will be compensated for any hours billed to clients subsequent to your termination.

*Id*. at 2-3 (emphasis in original).

In addition to this compensation policy, the contract provides that Garrison was "entitled to a promotional allowance in the amount of $15,000 annually" for use "in developing, supporting and promoting client, professional and business development."  Dkt. 31, Ex. 2 at 1.  Reimbursable expenses under Merchant's professional allowance policy include membership in law related organizations, CLEs, office supplies, as well as travel, promotion, entertainment, lodging and meals "where the activity is primarily for current or new client relationships, or business development, or attorney-staff professional development."  *Id*. at 3. To obtain expense reimbursement by the firm, "[o]riginal invoices, receipts, charge card clips, etc. must be submitted for all expenses in excess of $75 and should be submitted for all expenses where possible.  The business purpose, attendee names, relationship to M&G, amount, time and place must be included."  *Id*. at 2.  With the exception of technology or equipment purchased with professional allowance funds,[2] the policy does not provide a time limit for such submissions or set forth the obligations of lawyers who are departing the firm.

---

[2] With respect to technology or equipment purchased with professional allowance funds, the policy provides that "[a]s soon as it is known that an attorney will be leaving the firm, the equipment

1          Garrison worked for Merchant from August 1, 2007, to October 30, 2008, or

2  approximately fifteen months.  It is undisputed that when Merchant announced it was

3  terminating the relationship, Merchant originally offered to allow Garrison to remain with the

4  firm for approximately one month to transition his practice, but his termination was ultimately

5  made effective the day it was announced.  *See* Dkt. 26 at 9-10; Dkt. 30 at 1 (Garrison Decl.).

6  Specifically, on the morning of October 30, 2008, Merchant's managing partner, Randy King,

7  hailed Garrison into a conference room at the Seattle office and informed him that he was

8  being terminated.  Mr. King did not provide Garrison with written notice of his termination, or

9  inform him that he had two weeks before he was required to leave the firm.  Garrison testified

10  that "I told him since it took the better part of six months to get [my information] into the

11  system it was going to take me two or three months at least to get it out.  And he said that's not

12  satisfactory . . . I think what he said was it will have to be less than that, and that was the end."

13  Dkt. 28, Ex. A at 113 (Garrison Dep.).  Garrison asserted that based upon his "discussion with

14  Randy King it sounded like . . . a month would be okay, but there was no time set."  *Id*. at 119.

15  Garrison had lunch with his counsel in this action, Don Mullins, and then "[w]ent back to my

16  office, and about 4 o'clock in the afternoon Randy King called me back down to the

17  conference room, and said, have you had a discussion with Don Mullins? I said, yes . . . [a]nd

18  he said well, pack up your things and get out."  *Id*. at 114.  Merchant required building guards

19  to escort Garrison from the premises.  *See id*. at 116.

20          When Garrison was asked during his deposition why he was terminated by Merchant,

21  he responded that "[i]t's not that [the firm] necessarily wanted my clients all that badly, but I

22  have not been able to figure out any valid reason for the dismissal."  *See id*. at 121.  He

23  conceded, however, that he had been reprimanded on one prior occasion for mistreating his

24  secretary, and that several of his clients had indicated that they felt he had over-billed them for

25

26  <u>must</u> be purchased from the firm by the departing attorney at its book value as listed in the Elite
Accounting System."  *Id*. at 4.  This provision is not at issue in this case.

ORDER
PAGE - 6

services or were otherwise "dissatisfied" with his level of service. *See id.* at 52, 121-22, 136-41. When Garrison was presented with evidence that Merchant had entered into an agreement with one of Garrison's former clients, Leisure Concepts, "that the outstanding balance owed of approximately $131,000 will not be paid and [Merchant] will cancel the fees from our books," based upon the firm's decision to "write off [the fees] due to excessive billing," Garrison asserted that he "was not involved in discussions about this settlement, and I don't think it was appropriate to cut these fees back." *Id.* at 141-42. Garrison also testified that he had been paid for his billing relative to the Leisure Concepts matter, and Merchant had not attempted to recover the amounts it wrote off relative to the matter from him. *See id.* at 142.

In this action, the parties assert different calculations of the total amount of compensation Garrison received during his tenure at Merchant, and likewise have conflicting estimations of potential damages in this case.[3] During oral argument, however, both parties agreed that they are effectively working with the same numbers, and that any variation in their calculations of damages in this case does not present a material issue of fact. Thus, the Court adopts Garrison's calculation that he was paid a total of $197,065 during his employment at Merchant, as this number is consistent with the earning statements submitted to the Court.[4] *See* Dkt. 31, Ex. 1 at 4-37.

Garrison contends that based upon Merchant's billing records and analysis, he billed a total of $544,445 during his tenure, and $529,855 of that amount was actually invoiced to clients. *See* Dkt. 29 at 12; Dkt. 31, Ex. 1 at 1-3. He asserts that under the terms of the contract discussed above, his total compensation should have therefore equaled 40% of $529,855, or

---

[3] Merchant asserts that the firm paid Garrison a total of $195,750. Dkt. 27 at 2 (Skjeveland Aff.). By contrast, Garrison asserts that he was paid a total of $197,065 during his employment at Merchant. Dkt. 29 at 12. *See also* Dkt. 31, Ex. 1 at 4-37 (Garrison earning statements).

[4] Garrison received a bi-monthly draw of $7,500 from August 15, 2007 until April 15, 2008, with the exception of the pay period ending on December 15, 2007, when he was paid a total of $7,915. *See* Dkt. 31, Ex. 1 at 12. From April 30, 2008 until October 31, 2008, however, his bi-monthly draw was reduced to $5,250 to reconcile actual hours billed versus draws paid to Garrison from August 2007 to April 2008. *See id.* at 23-35. For the pay period immediately following his termination, Garrison was also paid $900 on November 14, 2008. *See id.* at 37. The sum total of these payments is $197,065.

1    $211,942.  Dkt. 29 at 12.  Because he received only $197,065 during his employment,

2    however, Garrison claims that Merchant withheld $14,877.40 in compensation for hours

3    actually billed by Garrison and invoiced to Merchant's clients, and which should have been

4    paid at the end of the pay period following his termination.  *See id*.  In addition to the

5    $14,877.40 in compensation, Garrison contends that he is entitled to an additional $5,250, the

6    amount of his bi-weekly draw at the time of his termination, as a result of the firm's failure to

7    provide him two weeks written notice of his termination.  *See id*. at 13.  Finally, he claims that

8    Merchant's failure to timely pay him these wages entitles him to double damages and

9    attorney's fees pursuant to RCW 49.48 *et seq*. and RCW 49.52 *et seq*., as well as

10   reimbursement for $4,183.45 in promotional expenses.  *See id*. at 12-15.  Although Garrison

11   also alleged in his complaint that Merchant violated the Washington Consumer Protection Act

12   and breached an oral contract to provide him with a year-end bonus, Garrison conceded both of

13   these claims during the course of this litigation and therefore this Court need not address

14   them.[5]  Dkt. 1, Ex. B at 4-6.

15            Merchant contends that Garrison is not entitled to any additional compensation for

16   hours billed by Garrison and invoiced to clients during Garrison's employment, because

17   Merchant reissued invoices to one of his clients that effectively reduced the amounts actually

18   invoiced to clients by $32,231 (as compared to Mr. Garrison's billings).  Dkt. 26 at 10-11.

19   Although Merchant's briefing does not provide further details, Merchant appears to be

20   referencing the firm's decision to write off Garrison's legal fees in the Leisure Concepts case

21   and re-issue invoices in January 2009.  When Merchant's Chief Financial Officer, Tracy

22   Skjeveland, "performed a reconciliation of [Garrison's] billings to determine whether

23   Merchant owed him any further compensation" at the end of the quarter following his

24

25            [5] Specifically, during oral argument on the summary judgment motions Garrison withdrew his
     oral contract claim.   In addition, on the last page of Garrison's response to Merchant's motion for
26   summary judgment, Garrison indicated that he "voluntarily withdraws his CPA claim under the
     Washington Consumer Protection Act."  Dkt. 33 at 6.

ORDER
PAGE - 8

1    termination, she determined that Merchant "had overpaid Mr. Garrison $12,399.94" when the

2    reissued invoices were taken into account. *Id*. at 11.  Merchant also denies Garrison's

3    remaining claims.

4                          IV.    DISCUSSION

5         A.    Garrison's Wage Claim for Hours Billed and Actually Invoiced to Clients

6              Garrison alleges that Merchant violated the terms of the contract by failing to pay him

7    all the compensation due as a result of hours billed by Garrison and actually invoiced to clients

8    by Merchant at the end of the pay period following his termination.  Specifically, he contends

9    that based upon Merchant's own billing records and analysis, he billed a total of $544,445

10   during his tenure at Merchant, and $529,855 of that amount was actually invoiced to clients.

11   *See* Dkt. 29 at 4, 12; Dkt. 31, Ex. 1 at 1-3 (Garrison earning statements).

12             Merchant responds that Garrison's calculations are flawed because he "failed to

13   account for 'client discounts,' and in his argument, failed to acknowledge the clear and

14   unambiguous terms of the Agreement providing that he 'will not be compensated for those

15   hours.'"  Dkt. 32 at 4 (citing Dkt. 28, Ex. C at 2).  Because Merchant construes the term "client

16   discounts" in the contract as including the hours the firm wrote off after re-issuing invoices to

17   Leisure Concepts in January 2009, Ms. Skjeveland "adjusted the hours 'actually invoiced' by

18   deducting 'client discounts'" when she reconciled Garrison's compensation.  Dkt. 32 at 3.

19   Based upon this adjustment, Ms. Skjeveland determined that Merchant had overpaid Garrison

20   almost $12,400, and that he was not entitled to further remuneration from the firm.[6]  *See id.*

21             In contrast, Garrison argues that the term "client discounts" in the contract refers to

22   "reductions to billing that take place prior to the submission of the amount 'actually invoiced'

23   to a client."  Dkt. 33 at 3.  In other words, Garrison asserts that "client discounts" are hours

24

25        [6] Specifically, Ms. Skjeveland concluded that "[i]ncluding client discounts, the total amount of
     his billings that should have been invoiced to clients was $458,375.15.  Utilizing the 40 percent
26   compensation rate based on that amount, Garrison should have been paid only $183,350.06."  Dkt. 27 at
     2-3 (Skjeveland Aff.).

ORDER
PAGE - 9

recorded by an attorney as "billed" to Merchant's clients, but never "actually invoiced" to that client.  Garrison argues that Merchant's contrary interpretation constitutes an "attempt to interject a term in the contract that is not present in the document," by reallocating the financial risk of non-collection from Merchant to Garrison.  *Id*. at 1, 4.  Garrison contends that because the contract does not make his compensation dependent upon the collections of legal fees actually invoiced to clients, but instead defines "actual billed hours [as] hours recorded by [the attorney] and billed to [Merchant's] clients and actually invoiced to clients," this Court should find that Garrison's "amount of compensation was to be based on a percentage of bills formally submitted to clients without regard to the actual collections."  *Id*. at 3.  Because Merchant "sent out the actual invoices to clients," including Leisure Concepts, while Garrison was still with the firm, Garrison asserts that Merchant's "after-the-fact adjustments to the billing" based on collections problems with Leisure Concepts cannot reduce his compensation under the contract.  *Id*.

As a general proposition, employment contracts are governed by the same rules as other contracts.  *Kloss v. Honeywell, Inc*., 77 Wash. App. 294, 298 (1995).  Washington courts have applied the following basic principles in construing written contracts: "(1) the intent of the parties controls; (2) the court ascertains the intent from reading the contract as a whole; and (3) the court will not read an ambiguity into a contract that is otherwise clear and unambiguous."  *Dice v. City of Montesano*, 131 Wash. App. 675, 684-85 (2006) (quoting *Mayer v. Pierce County Medical Bureau, Inc*., 80 Wash. App. 416, 420 (1995)).  "A contract provision is ambiguous when its terms are uncertain or when its terms are capable of being understood as having more than one meaning.  A provision, however, is not ambiguous merely because the parties suggest opposing meanings."  *Mayer*, 80 Wash. App. at 420 (internal citations omitted).  Interpretation of an unambiguous contract is a question of law, and therefore "summary judgment is proper even if the parties dispute the legal effect of a certain provision."  *Id*. (citing *Voorde Poorte v. Evans*, 66 Wash. App. 358, 362 (1992)).  *See also*

ORDER
PAGE - 10

*Stranberg v. Lasz*, 115 Wash. App. 396, 402 (2003).  Words in a contract are generally given their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent.  *Hearst Communications, Inc. v. Seattle Times Co*., 154 Wash.2d 493, 504 (2005).

The Court agrees with the parties' assertions that the employment contract in this case is unambiguous, although the parties have attached opposing meanings.  Dkt. 29 at 9; Dkt. 32 at 2.  While the contract does not affirmatively define "client discounts," the Court finds that the placement of the term "client discounts" within the contract, as well as the wording of the contract as a whole, evidences an intent by the parties that "client discounts" broadly encompass reductions to billing that take place *prior* to the submission of the amount 'actually invoiced' to a client.  The Court notes that such pre-invoice billing reductions may include an attorney's agreement to limit the amount of time they devote to a particular project at the outset of the representation, favored client fee reduction, or hours that are recorded by an attorney as billable to Merchant's clients but which are never "actually invoiced" because the attorney or billing partner declined to invoice the client for those hours.  In any event, "client discounts" are "time recorded by [an attorney]" that is never actually invoiced to the client.  Dkt. 28, Ex. C at 2.

First, the Court notes that this intent may be inferred from the placement of the term "client discounts" within the contract.  For example, "client discounts" are referred to as noncompensable "hours," and this term immediately follows the statement that "[t]ime recorded by you shall not be treated as an actual billing *unless and until* invoiced to clients." *Id*. (emphasis added).  In addition, the contract discusses "client discounts" in conjunction with "contingent fees," and affords them similar treatment.  Specifically, the contract provides that "[c]lient discounts and contingent fees are not considered hours billed and invoiced to the client and therefore [Garrison] will not be compensated for those hours." *Id*.  In light of the fact that hours "billed" by an attorney on a contingent fee matter are never directly invoiced to

ORDER
PAGE - 11

1   the client, the contemporaneous reference to "client discounts" suggests that they also

2   constitute a reduction in billed hours prior to a client's receipt of an invoice.

3         Second, the Court notes that no provision of the contract makes Garrison's

4   compensation dependent on the firm's ability to actually collect legal fees from clients who

5   have been invoiced.  Indeed, if that had been the parties' intent, they would have included a

6   provision in the contract stating that Garrison's compensation would be based upon hours or

7   receivables "actually paid" by Merchant's clients, or on "payment received" from Merchant's

8   clients.  Absent such a provision, however, Merchant bears the risk under this contract that

9   firm clients will decline to pay all the legal fees that Merchant invoiced to them.  Merchant

10  asks the Court to find that Garrison bears the risk, under the contract, that his compensation

11  will be reduced in the event that the firm decides to "write off" hours that had already been

12  recorded, billed, and invoiced to a client, and then re-issue invoices at a later date.  Because

13  such a finding would require a strained reading of the contract, the Court declines to construe

14  the contract in such a manner.  *See Litho Color, Inc. v. Pacific Employers, Ins. Co*., 98 Wash.

15  App. 286, 304 (1999) ("Courts must read each contract as an average person would read it

16  without giving it strained or forced meaning.").  The fact that Garrison's compensation is

17  dependent upon hours "actually invoiced to clients" does not reallocate the risk from Merchant

18  to Garrison that clients may decline to pay an invoice in full.  *See* Dkt. 28, Ex. C at 2.

19        Thus, the Court finds no ambiguity, and concludes that the term "client discounts" does

20  not include hours billed by attorneys but written off by Merchant after a client refuses to pay

21  an initial invoice in full.  Garrison's right to compensation is based upon "actual billed hours

22  [by Garrison] on or after the effective date" of the contract, defined as "hours recorded by

23  [Garrison] and billed to Merchant & Gould's clients and actually invoiced [by Garrison or

24  other Merchant billing partner] to clients."  Dkt. 28, Ex. C at 2.  Once these basic requirements

25  are met, Merchant must compensate Garrison based upon the hours actually invoiced to clients.

26  Because these requirements were satisfied with respect to Leisure Concept's legal fees,

ORDER
PAGE - 12

1   Garrison's compensation should have been calculated without regard to Merchant's January

2   2009 re-issued invoice.  Garrison's motion for summary judgment on this claim is GRANTED,

3   and he is entitled to an additional $14,877.40 in compensation from Merchant.

4          B.      Garrison's Claim for Compensation for the Two-Week Notice Period

5          Garrison contends that he is also entitled to $5,250.00, the amount of his bi-weekly

6   draw at the time of his termination, for the two-week period of time when he would have

7   remained employed if Merchant had honored the provision of the employment contract

8   entitling him to two weeks written notice of his termination.  *See* Dkt. 28, Ex. C at 4.  It is

9   undisputed that Garrison was not provided with two weeks written notice, but was ultimately

10  asked to leave the firm on the same day that he was terminated.  Merchant asserts that "Mr.

11  Garrison's actions on his termination date . . . gave Merchant no choice but to make the

12  termination effective immediately . . . Thus, Garrison effectively waived any claim he may

13  have to a 'two-week' notice period."  Dkt. 32 at 5.

14         The Court "ascertains the intent [of the parties] from reading the contract as a whole,"

15  and that intent controls this Court's construction of the agreement.  *See Mayer*, 80 Wash. App.

16  at 420.  When the two-week notice provision is viewed in conjunction with the compensation

17  provisions of the contract, it becomes evident that it was intended to provide terminated

18  attorneys with time to separate from the firm and transition their law practice.  It was not

19  intended, as Garrison contends, to guarantee terminated attorneys compensation irrespective of

20  their hours actually billed and invoiced to clients during period, as evidenced by the fact that

21  no provision of the contract exempts that two-week notice period from Merchant's quarterly

22  reconciliation process.

23         As discussed in detail above, the contract makes Garrison's compensation entirely

24  dependent upon Garrison's "actual hours billed during the previous quarter."  Dkt. 28, Ex. C at

25  3.  Specifically, "at the end of each calendar quarter, a reconciliation of hours billed vs. draws

26  paid will take place and any difference will be adjusted for in the first draw check of the

ORDER
PAGE - 13

1   subsequent quarter." *Id.* This compensation structure is not altered by an attorney's

2   termination or voluntary decision to leave the firm. For example, the compensation provisions

3   of the contract do not guarantee attorneys payment during the two week period immediately

4   following their termination, regardless of their hours billed to clients during that time. On the

5   contrary, the contract provides that Garrison will be "compensated for any hours billed to

6   clients subsequent to [his] termination." *Id.*

7       In light of this unambiguous compensation structure, the Court finds that construing the

8   two-week notice provision as guaranteeing Garrison a $5,250 draw, irrespective of his hours

9   billed and actually invoiced to clients following his termination, would be inconsistent with the

10  parties' manifested intent. *See Mayer*, 80 Wash. App. at 420. Garrison's right to

11  compensation is based upon hours billed and actually invoiced to Merchant's clients during his

12  tenure at Merchant, and this remains unchanged by his termination. Accordingly, Merchant's

13  motion for summary judgment on this claim is GRANTED.

14      C.    Garrison's Claim for Reimbursement of Promotional Expenses

15      Garrison argues that he is entitled to reimbursement for certain promotional expenses

16  that he incurred on his business credit card in September and October 2008 with the

17  expectation that Merchant would reimburse him from his $15,000 promotional allowance.

18  Dkt. 29 at 4-6, 15. Specifically, Garrison seeks reimbursement for an itemized list of expenses

19  that includes CLE expenses, office supplies, bar dues, legal convention registration fees, as

20  well as airfare, lodging, and food for business related trips.[7] *See id*. at 5-6. As evidence of

21  these expenses, Garrison has produced marked credit card statements from September and

22

23      [7] Although Garrison asserts that he is entitled to reimbursement in the amount of $4,183.45, the
    Court notes that his listed expenses actually total $4,237.45. Moreover, Garrison failed to provide any
24  explanation in his briefing or marked credit card statements regarding the business purpose of several of
    these expenses, such as a $704.27 charge at the Four Seasons Resort in Punta Mita, Mexico, and a
25  $14.15 trip to Bartell Drugs in Seattle. *See* Dkt. 28 at 5-6; Dkt. 30, Ex. 2 (Garrison Decl.). During oral
    argument, Garrison conceded that these expenses were mistakenly included in his calculations. Thus,
26  exclusive of these unexplained expenses, Garrison alleges that he incurred a total of $3,362.57 in
    unreimbursed promotional expenses during September and October 2008.

ORDER
PAGE - 14

1   October 2008.  *See* Dkt. 30 at 1-3 (Garrison Decl.); *id.*, Ex. 2 (credit card statements).

2   Garrison testified that although he did not know whether he submitted the expenses for

3   reimbursement along with the required expense certification or reimbursement forms, if he

4   failed to do so it was because he "didn't have any idea that things were coming to an end" at

5   the firm.  Dkt. 28, Ex. 1 at 155, 165 (Garrison Dep.).

6          Merchant points out that Garrison "conceded at his deposition that he 'may not have'

7   submitted any such reimbursement requests to Merchant and, regardless, he certainly did not

8   seek reimbursement for these promotional expenses consistent with Merchant's policies related

9   to the same."  Dkt. 32 at 5.  During oral argument, Merchant asserted that even if Garrison had

10  submitted the proper documentation of his September and October 2008 expenses following

11  his termination, the firm would have reimbursed them because there is no time limit set forth in

12  the professional allowance policy agreement.

13         The Court finds Merchant's arguments persuasive.  This Court's review of the firm's

14  professional allowance policy in effect at the time that Garrison left the firm confirms that

15  there were no provisions limiting Garrison's ability to submit the "[o]riginal invoices, receipts,

16  charge card clips . . .  for all expenses in excess of $75," as well as "the business purpose,

17  attendee names, relationship to M&G, amount, time and place" of each expense in accordance

18  with the firm's written policy.  Dkt. 31, Ex. 2 at 2.  Moreover, there is no provision in either

19  the professional allowance policy or employment contract suggesting that Merchant would no

20  longer reimburse promotional expenses following an attorney's termination, as long as the

21  expenses were incurred during the attorney's employment.  To date, however, Garrison has

22  failed to submit the appropriate documentation of his promotional expenses incurred in

23  September and October 2008 to Merchant in accordance with the firm's policy.  Because

24  Merchant has indicated that Garrison can submit the claimed expenses directly to it, even at

25  this stage, Merchant's motion for summary judgment on this claim is GRANTED.

26

ORDER
PAGE - 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

D.        Garrison's Wage Claims Under RCW 49.48 and RCW 49.52

Garrison argues that he is entitled to double damages pursuant to RCW 49.48.010, RCW 49.52.050, and RCW 49.52.070 because Merchant breached a written contract of employment that provided for specific remuneration and benefits.  Dkt. 29 at 10.  Merchant responds that even if the firm does owe Garrison additional compensation, Merchant's failure to compensate Garrison was not "willful" because it was the result of a bona fide dispute regarding Merchant's obligation to pay Garrison under the contract.  *See* Dkt. 26 at 18.

When an employee ceases to work for an employer, the employer must pay the employee the wages due to him or her "at the end of the established pay period."  RCW 49.48.10.  If an employer willfully refuses to pay wages that it is obligated to pay by law or contract, an employee is entitled to exemplary damages.  *See* RCW 49.52.050(2) (providing that any employer is guilty of a misdemeanor if that entity "[w]ilfully and with intent to deprive the employee of any part of his wages, [pays] any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract[.]").  RCW 49.52.070 provides a corresponding civil remedy against the employer, and provides that double damages may be appropriate when an employer violates any of the provisions of RCW 49.52.050(2).

The critical determination under RCW 49.52.070 and RCW 49.52.050(2) is whether an employer's failure to pay the employee wages was "willful."  *See Schilling v. Radio Holdings*, 136 Wash.2d 152, 160 (1998).  The test is not a stringent one: "The nonpayment of wages is willful when it is the result of a knowing and intentional action and not the result of a bona fide dispute."  *Lillig v. Becton-Dickinson*, 105 Wash.2d 653, 659 (1986); *see Duncan v. Alaska USA Fed. Credit Union, Inc.*, 148 Wash. App. 52, 79 (2008).  A dispute is "bona fide" if there is a "fairly debatable" dispute over whether all or a portion of the wages must be paid.  *See Schilling*, 136 Wash.2d at 161.  An employer's genuine belief that he or she is not obligated to pay certain wages precludes the withholding of those wages from falling within the scope of

ORDER
PAGE - 16

RCW 49.52.050(2) and 49.52.070. *See Duncan*, 148 Wash. App. at 79. Moreover, the question of willfulness, although ordinarily a question of fact, may be decided by a court on summary judgment where there is no dispute as to the material facts and reasonable minds could reach but one conclusion from those facts. *Schilling*, 136 Wash.2d at 160; *Duncan*, 148 Wash. App. at 79.

Here, although Garrison has prevailed on his wage claim and established that he is entitled to an additional $14,877.40 in compensation from Merchant under their employment contract, he has not demonstrated that Merchant willfully withheld these wages. The Court finds that there was a bona fide dispute as to Merchant's obligation to pay Garrison under the contract. Merchant acted on its genuine belief that it was not obligated to pay Garrison additional compensation under the contract, and therefore Garrison is not entitled to double damages under RCW 49.52.070. Merchant's motion for summary judgment on this claim is GRANTED.

E.      Garrison's Claim for Attorneys Fees under RCW 49.48.030

Finally, Garrison argues that an employee who was not timely paid wages or benefits as required by RCW 49.48.010 is entitled to an award of his attorneys fees pursuant to RCW 49.48.030. Garrison argues that, unlike the double damages provision discussed above, RCW 49.48.030 applies even if a bona fide dispute exists between the employer and employee. Dkt. 29 at 15-16. Merchant also conceded during oral argument that if Garrison prevailed on his first claim, he was entitled to recover reasonable attorney's fees and costs under Washington law.

RCW 49.48.030 provides that "[i]n any action in which any person is successful in recovering judgment for wages or salary owed to him or her, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer[.]" RCW 49.48.030. However, this provision does not apply "if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said

ORDER
PAGE - 17

wages or salary." *Id.  See also Gaglidari v. Denny's Restaurants*, Inc., 117 Wash.2d 426, 450 (9th Cir. 1991) ("[A]ttorney fees are recoverable in actions for lost wages for breach of employment contract.").

As discussed above, the Court finds that Garrison is entitled to receive an additional $14,877.40 in compensation from Merchant under the unambiguous terms of their employment contract.  As Merchant alleged in this action that it "owes Mr. Garrison nothing," Dkt. 26 at 18, the amount of Garrison's recovery is not "less than or equal to the amount admitted by the employer to be owing[.]"  RCW 49.48.030.  Accordingly, the Court finds that Garrison is entitled to recover reasonable attorney's fees and costs.  Garrison's motion for summary judgment on this claim is GRANTED.

V.      CONCLUSION

For the reasons discussed above, Garrison's and Merchant's motions for summary judgment, Dkts. 26 and 29, are GRANTED IN PART and DENIED IN PART and judgment shall be entered accordingly.  Garrison is awarded $14,877.40 in additional compensation from Merchant, as well as reasonable attorney's fees and costs.  Merchant's motion for summary judgment is GRANTED with respect to Garrison's remaining claims.  The Clerk is directed to send copies of this Order to counsel for all parties.

DATED this 10th day of March, 2011.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

ORDER
PAGE - 18